No. 12-17803

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ESPANOLA JACKSON, *et al.*,
Plaintiffs-Appellants,

v.

THE CITY AND COUNTY OF SAN FRANCISCO, *et al*.,
Defendants-Appellees,

On Appeal from the United States District Court
for the Northern District of California
(CV-09-2143-RS)

**BRIEF AMICUS CURIAE OF
CENTER FOR CONSTITUTIONAL JURISPRUDENCE
IN SUPPORT OF PLAINTIFF-APPELLANT**

ANTHONY T. CASO, No. 88561
   *Counsel of Record*
JOHN C. EASTMAN, No. 193726
KAREN J. LUGO, No. 241268
   Center for Constitutional Jurisprudence
   c/o Chapman University School of Law
   One University Drive
   Orange, California 92886
   Telephone: (916) 601-1916
   E-Mail: caso@chapman.edu

Counsel for Amicus Curiae
Center for Constitutional Jurisprudence

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Amicus Curiae Center for Constitutional Jurisprudence hereby states that it has no parent companies, subsidiaries, or affiliates that have issued shares to the public.

# TABLES OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...................................................... i

TABLE OF AUTHORITIES .................................................................................. iii

IDENTITY AND INTEREST OF AMICUS ........................................................... 1

SUMMARY OF ARGUMENT ................................................................................ 1

ARGUMENT ............................................................................................................. 2

    I.   THE RIGHT TO BEAR ARMS PROTECTED BY THE SECOND AMENDMENT IS PART OF THE FUNDAMENTAL RIGHT TO SELF-DEFENSE ................................................................................... 2

    II.  THE SUPREME COURT HAS ALREADY REJECTED RATIONAL BASIS AND INTERMEDIATE SCRUTINY REVIEW OF REGULATIONS "INFRINGING" THE RIGHT TO KEEP AND BEAR ARMS ................................................................... 6

CONCLUSION ....................................................................................................... 10

CERTIFICATE OF COMPLIANCE ..................................................................... 11

CERTIFICATE OF SERVICE ............................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Abood v. Detroit Board of Educ.*,
    431 U.S. 209 (1977) .................................................................................... 7

*Ball v. Massanari*,
    254 F.3d 817 (9th Cir. 2001) ....................................................................... 7

*Chaplinsky v. State of New Hampshire*,
    315 U.S. 568 (1942) .................................................................................... 8

*Clark v. Jeter*,
    486 U.S. 456 (1988) .................................................................................... 7

*Heller v. District of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011) ................................................................... 7

*J.W. v. City of Tacoma*,
    720 F.2d 1126 (9th Cir. 1983) ..................................................................... 6

*Murdock v. Com. of Pennsylvania*,
    319 U.S. 105 (1943) .................................................................................... 9

*National Rifle Association v. Bureau of Alcohol, Tobacco, and Firearms*,
    700 F.3d 185 (5th Cir. 2012) ....................................................................... 7

*Nordlinger v. Hahn*,
    505 U.S. 1 (1992) ........................................................................................ 6

*Ohralik v. Ohio State Bar Ass'n*,
    436 U.S. 447 (1978) .................................................................................... 8

*State v. Reid*,
    1 Ala. 612 (1840) ........................................................................................ 8

*United States v. Carolene Products*,
    304 U.S. 144 (1938) .................................................................................... 6

*United States v. Chester*,
    628 F.3d 673 (4th Cir. 2010). ...................................................................... 7

**Other Authorities**

2 COLLECTED WORKS OF JAMES WILSON (K. Hall & M. Hall eds.2007) ................. 2

Alexander White, Winchester Virginia Gazzette, February 22, 1788,
reprinted in 8 THE DOCUMENTARY HISTORY OF THE RATIFICATION OF THE
CONSTITUTION, Virginia No. 1 (John P. Kaminski, *et al.* eds. 2009)......................5

Aristotle, THE ATHENIAN CONSTITUTION (Sir Frederic G. Kenyon trans., 1901) .....3

Cicero, Marcus Tullius, SELECTED SPEECHES OF CICERO
(Michael Grant ed. & trans., 1969)..........................................................................4

Convention Debates, reprinted in 10 THE DOCUMENTARY HISTORY OF THE
RATIFICATION OF THE CONSTITUTION, Virginia No. 3 (John P. Kaminsky, *et al.*
eds. 2009)................................................................................................................5

Convention Debates, reprinted in 2 THE DOCUMENTARY HISTORY OF THE
RATIFICATION OF THE CONSTITUTION, Pennsylvania
(John P. Kaminsky, *et al.* eds. 2009)......................................................................5

Declaration of Rights and Form of Ratification Poughkeepsie
Country Journal, reprinted in 18 THE DOCUMENTARY HISTORY
OF THE RATIFICATION OF THE CONSTITUTION, Commentaries on the
Constitution No. 6 (John P. Kaminsky, *et al.* eds. 2009).......................................5

Grotius, Hugo, THE RIGHTS OF WAR AND PEACE
(A.C.Campbell trans., 1901)...................................................................................4

Halbrook, Stephen P., THAT EVERY MAN BE ARMED (1994)...................................3

Hobbes, Thomas, LEVIATHAN (Richard Tuck ed., 1991) ..........................................4

Kopel, David, Gallant, Paul & Eisen, Joanne D., *The Human Right of
Self-Defense*, 22 BYU J. Pub. Law 43 (2007-2008) ...............................................4

Letter from Jeremy Belknap to Ebenezer Hazard, reprinted in 7 The
DOCUMENTARY HISTORY OF THE RATIFICATION OF THE CONSTITUTION,
Massachusetts No. 4, (John P. Kaminski, *et al.* eds. 2009)....................................5

Locke, John, SECOND TREATISE OF CIVIL GOVERNMENT (1690) .............................3

North Carolina Convention Amendments, reprinted in 18 THE DOCUMENTARY
HISTORY OF THE RATIFICATION OF THE CONSTITUTION, Commentaries on the
Constitution No. 6 (John P. Kaminsky, *et al.* eds. 2009).......................................5

Pa. Const., Art. IX, § 21 (1790)..................................................................................2

The Address and Reasons of Dissent of the Minority of the Convention
of the State of Pennsylvania to their Constituents, reprinted in 2 THE
DOCUMENTARY HISTORY OF THE RATIFICATION OF THE CONSTITUTION,
Pennsylvania (John P. Kaminsky, *et al.* eds. 2009) ...............................................5

## IDENTITY AND INTEREST OF AMICUS

As required by Federal Rule of Appellate Procedure 29(a), all parties have consented to the filing of this brief. No counsel for any of the parties authored any portion of this brief in whole or in part. No person or entity other amicus, its members, or its counsel have contributed any money for the preparation or filing of this brief.

Amicus, Center for Constitutional Jurisprudence, is dedicated to upholding the principles of the American Founding, including the important issue raised in this case of the Second Amendment and the fundamental right of armed self-defense. The Center participates in litigation defending the principles embodied in the United States Constitution. In addition to providing counsel for parties at all levels of state and federal courts, the Center has participated as amicus curiae before this Court and many other courts, including the United States Supreme Court.

## SUMMARY OF ARGUMENT

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court recognized that the Second Amendment protected an individual right to keep and bear arms. The Second Amendment did not invent a new right. As the Court recognized, it protects the pre-existing right to armed self-defense from "infringement." This right is a fundamental human right and as such may not be infringed absent a compelling state interest. In *Heller* the Court did not purport to analyze

1

every potential infringement of the right to keep and bear arms. The Court did, however, acknowledge that the right to keep and bear arms included armed self-defense both in and out of the home. The Court also rejected the use of either a rational basis test or some form of intermediate scrutiny for testing the validity of regulations that infringed on the right to keep and bear arms. How strict scrutiny would apply to a regulation that operated at the fringe of Second Amendment liberty is not tested in this case. The ordinances at issue restrict the availability of handguns for self-defense inside the home and limit the sale of ammunition in the City to types that the City considers appropriate for "sporting" rather than self-defense purposes. Such restrictions may be upheld, if at all, only by a showing that they are supported by a compelling purpose that is actually advanced by the challenged regulation.

## ARGUMENT

### I. THE RIGHT TO BEAR ARMS PROTECTED BY THE SECOND AMENDMENT IS PART OF THE FUNDAMENTAL RIGHT TO SELF-DEFENSE

The Supreme Court in *Heller* acknowledged that the Second Amendment's protection of the right to "bear arms" was a right to "carry" a weapon. *Heller*, 554 U.S. at 584. This right to "carry" a weapon is inextricably linked to the right of self-defense. *Id.* at 585 (*citing* 2 COLLECTED WORKS OF JAMES WILSON 1142, and n. x (K. Hall & M. Hall eds.2007) (citing Pa. Const., Art. IX, § 21 (1790)). This

2

purpose was expressed in the early state constitutions of Pennsylvania, Vermont, Indiana, Mississippi, Connecticut, Alabama, Missouri, and Ohio. *Heller*, 554 U.S. at 585 and n.8.

This idea of a right to bear arms for self-defense was not a new idea of the Founders. History is replete with examples, from which the Framers took their lessons about human governance, that reveal the fundamental nature of the individual right to keep and bear arms. For example, Aristotle tells the story of how the tyrant Pisistratus took over Athens in the sixth century B.C. by disarming the people through trickery. Aristotle, THE ATHENIAN CONSTITUTION ch. 15 (Sir Frederic G. Kenyon trans., 1901). Indeed, Aristotle stated that "arms bearing" was an essential aspect of each citizen's proper role. Stephen P. Halbrook, THAT EVERY MAN BE ARMED 11 (1994).

Similar events took place in Seventeenth Century England. The Supreme Court noted that "[b]etween the Restoration and the Glorious Revolution, the Stuart Kings Charles II and James II succeeded in using select militias loyal to them to suppress political dissidents, in part by disarming their opponents." *Heller*, 554 U.S. at 592-93. The Court also discussed the 1671 Game Act wherein "the Catholic James II had ordered general disarmaments of regions home to his Protestant enemies." *Id.*

Those thinkers who most influenced the Framers understood that the right to

3

keep and bear arms is essential for the preservation of liberty. John Locke noted the "fundamental, sacred, and unalterable law of self-preservation." John Locke, SECOND TREATISE OF CIVIL GOVERNMENT § 149 (1690). Locke argued that the right to use force in self-defense is a necessity. *Id.* at § 207. This right to armed self-defense is also evident in the writings of Thomas Hobbes: [a] covenant not to defend my selfe from force, by force, is always voyd." Thomas Hobbes, LEVIATHAN 98 (Richard Tuck ed., 1991).

Earlier works by Grotius and Cicero also note this basic human right. Hugo Grotius, THE RIGHTS OF WAR AND PEACE 76-77, 83 (A.C.Campbell trans., 1901) ("When our lives are threatened with immediate danger, it is lawful to kill the aggressor"); Marcus Tullius Cicero, SELECTED SPEECHES OF CICERO 222, 234 (Michael Grant ed. & trans., 1969) ("[Natural law lays] down that, if our lives are endangered by plots or violence or armed robbers or enemies, any and every method of protecting ourselves is morally right"); *see also* David Kopel, Paul Gallant & Joanne D. Eisen, *The Human Right of Self-Defense*, 22 BYU J. Pub. Law 43, 58-92 (2007-2008) (detailing writings of early philosophers regarding the right and duty of self-defense).

There is no doubt that the Founders also believed in a natural right to armed self-defense. The failure to recognize a right to keep and bear arms in the original Constitution was a point of contention at a number of state ratifying conventions.

Samuel Adams proposed an amendment to the Massachusetts resolution to ratify the convention that included a command that "Congress should not infringe the ... right of peaceable citizens to bear arms." Letter from Jeremy Belknap to Ebenezer Hazard, reprinted in 7 THE DOCUMENTARY HISTORY OF THE RATIFICATION OF THE CONSTITUTION, Massachusetts No. 4, at 1583 (John P. Kaminski, *et al.* eds. 2009).

A number of advocates for the Constitution argued that Congress would have no power to interfere with the "rights of bearing arms for defence." Alexander White, Winchester Virginia Gazzette, February 22, 1788, reprinted in 8 THE DOCUMENTARY HISTORY OF THE RATIFICATION OF THE CONSTITUTION, Virginia No. 1, *supra* at 404. Notwithstanding these assurances, there were a number of proposals for amending the proposed Constitution to include an express recognition of the right to bear arms for defense. *E.g.*, Convention Debates, reprinted in 2 THE DOCUMENTARY HISTORY OF THE RATIFICATION OF THE CONSTITUTION, Pennsylvania, *supra* at 597-98; The Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania to their Constituents, reprinted in 2 THE DOCUMENTARY HISTORY OF THE RATIFICATION OF THE CONSTITUTION, Pennsylvania, *supra* at 623-24; Convention Debates, reprinted in 10 THE DOCUMENTARY HISTORY OF THE RATIFICATION OF THE CONSTITUTION, Virginia No. 3, *supra* at 1553; North Carolina Convention Amendments, reprinted in 18 THE DOCUMENTARY HISTORY OF THE RATIFICATION OF THE CONSTITUTION, Commentaries on the

Constitution No. 6, *supra* at 316; Declaration of Rights and Form of Ratification Poughkeepsie Country Journal, reprinted in 18 THE DOCUMENTARY HISTORY OF THE RATIFICATION OF THE CONSTITUTION, Commentaries on the Constitution No. 6, *supra* at 298.

This general unease with how the new federal government would exercise power led to the adoption of the Bill of Rights, including the right to keep and bear arms. This history demonstrates that the Second Amendment enshrines a fundamental interest. Like other fundamental interests protected by the Constitution, regulations that seek to restrict the protected right are tested by strict scrutiny.

**II. THE SUPREME COURT HAS ALREADY REJECTED RATIONAL BASIS AND INTERMEDIATE SCRUTINY REVIEW OF REGULATIONS "INFRINGING" THE RIGHT TO KEEP AND BEAR ARMS**

The Supreme Court has long recognized that the liberties enshrined in the Bill of Rights are best protected by enhanced judicial scrutiny. *United States v. Carolene Products*, 304 U.S. 144, 152 n.4 (1938). The same is true when the regulation infringes on a fundamental interest. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *J.W. v. City of Tacoma*, 720 F.2d 1126, 1128 (9th Cir. 1983). It comes as no surprise, therefore, that the Court in *Heller* categorically rejected rational basis review of laws infringing the right to bear arms. *Heller*, 554 U.S. at 628 n.27. The Court also rejected Justice Breyer's proposed test of intermediate scrutiny. *Id*.

6

The Court labeled Justice Breyer's proposed approach as "interest balancing." The test would uphold laws that "advance goals of great public importance" that are appropriately "tailored" in scope. *Id.* at 682 (Breyer, J., dissenting). Whatever the label, this sounds very much like what has been called intermediate scrutiny. *See Clark v. Jeter*, 486 U.S. 456, 461 (1988) ("To withstand intermediate scrutiny, a statutory classification must be substantially related to an important governmental objective."); *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001) (intermediate scrutiny asks whether the statute is substantially related to an important governmental interest.").

Some Circuit Courts, considering regulations that raised different Second Amendment concerns have nonetheless sought to preserve intermediate scrutiny for regulations that they label as outside the "core" of the Second Amendment. *See*, *e.g.*, *National Rifle Association v. Bureau of Alcohol, Tobacco, and Firearms*, 700 F.3d 185, 195 (5th Cir. 2012); *Heller v. District of Columbia*, 670 F.3d 1244, 1261-62 (D.C. Cir. 2011); *United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010). Attempting to limit the Second Amendment to a "core" is of course a perilous enterprise. The Supreme Court rejected exactly that type of analysis for First Amendment cases. *Abood v. Detroit Board of Educ.*, 431 U.S. 209, 231-32 (1977) ("[Our] cases have never suggested that expression about philosophical, social, artistic, economic, literary, or ethical matters -- to take a nonexhaustive list of labels

7

-- is not entitled to full First Amendment protection.").

The Court in *Heller* likened the First and Second Amendments in rejecting Justice Breyer's proposed intermediate scrutiny. *Heller*, 554 U.S. at 635. Intermediate scrutiny does not work precisely because: "The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Id*. at 634.

The Courts in these cases have attempted to designate activities that have a "subordinate position in the scale" of Second Amendment values. *Cf. Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978). They forget that it took the courts years to develop "certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." *See Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 571-72, (1942).

In any event, this Court need not worry about how to apply scrutiny to regulations that seek to regulate only at the margins the right to keep and bear arms. In *Heller*, the Court cited with approval a state court decision that held that a regulation "'which requires arms to be so borne as to render them wholly useless for the purpose of defence, would be clearly unconstitutional.'" *Id*. at 629 (*quoting State v. Reid*, 1 Ala. 612, 616–617 (1840)). The San Francisco ordinances raise the same

8

concerns. A law that prohibits easy access to a handgun if one is confronted in the night with an intruder renders the gun "wholly useless" for self-defense. Yet the ordinance requires the gun to be locked away whenever it is not worn on the person. The other ordinance under review seeks to make the gun less effective – limiting the types of ammunition that can be sold to that which the City decides has a "sporting" rather than "self-defense" purpose. This is no more constitutional than an ordinance that would limit the length or the subject matter of the topics covered in the newspaper. The right at issue "exists apart from state authority." *See Murdock v. Com. of Pennsylvania*, 319 U.S. 105, 114-15 (1943). Indeed, the Second Amendment enshrines rights that preexist the Constitution. *Heller*, 554 U.S. at 592.

## CONCLUSION

This case does not present the court with the opportunity to devise a grand theory of Second Amendment law that will result in "well-defined and narrowly limited classes" of behavior that fall clearly outside the scope of the Constitution. Instead, the Court is called on to apply traditional strict scrutiny to regulations that infringe on a fundamental human right. As the Court in *Heller* noted, "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Id*. at 634-35.

DATED: February 14, 2013.

Respectfully submitted,

ANTHONY T. CASO
JOHN C. EASTMAN
KAREN J. LUGO
Center for Constitutional Jurisprudence


    s/ Anthony T. Caso
ANTHONY T. CASO

Counsel for Amicus Curiae
Center for Constitutional Jurisprudence

## CERTIFICATE OF COMPLIANCE

Form 6.  Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   ☑ this brief contains  2,080 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(b)(iii), *or*

   ☐ this brief uses a monospaced typeface and contains ____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☑ this brief has been prepared in a proportionally spaced typeface using WordPerfect 12 in 14-point Times New Roman, *or*

   ☐ this brief has been prepared in a monospaced typeface using WordPerfect 12 with ____ characters per inch and type style ____.

   DATED: February 14, 2013.

                                                    s/ Anthony T. Caso
                                                    ANTHONY T. CASO

                                            Counsel for Amicus Curiae
                                            Center for Constitutional Jurisprudence

11

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 14, 2013.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

                                                  s/ Anthony T. Caso
                                                  ANTHONY T. CASO