**No. 12-17803**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
_____

ESPANOLA JACKSON, *et al*,

Plaintiffs-Appellants,

v.

CITY AND COUNTY OF SAN FRANCISCO, *et al*,

Defendants-Appellees.
_____

**On Appeal from the United States District Court
For the Northern District of California
Case No. CV-09-2143-RS**
_____

**BRIEF OF *AMICI CURIAE* CALIFORNIA RIFLE AND
PISTOL ASSOCIATION FOUNDATION AND
INDEPENDENCE INSTITUTE IN SUPPORT OF
PLAINTIFFS-APPELLANTS AND IN SUPPORT OF REVERSAL**
_____

David B. Kopel                          Dan M. Peterson*
Independence Institute                  Dan M. Peterson PLLC
727 E. 16th Ave.                        3925 Chain Bridge Road, Suite 403
Denver, Colorado 80203                  Fairfax, Virginia 22030
Telephone: (303) 279-6536               Telephone: (703) 352-7276
                                        dan@danpetersonlaw.com
                                        *Counsel of Record

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

The California Rifle and Pistol Association Foundation is a 501(c)(3) nonprofit organization which has no parent corporation. It issues no stock, and therefore, no publicly held company owns 10% or more of its stock.

The Independence Institute is a 501(c)(3) nonprofit organization which has no parent corporation. It issues no stock, and therefore, no publicly held company owns 10% or more of its stock.

/s/ Dan M. Peterson
Dan M. Peterson

Counsel for *Amici Curiae*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTEREST OF *AMICI CURIAE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT PURSUANT TO RULE 29(c) . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      THE PROPER STANDARD OF REVIEW IS
        THE HISTORICAL AND TEXTUAL ANALYSIS
        EMPLOYED IN *HELLER*, NOT ANY FORM OF
        MEANS-END SCRUTINY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.     IF *HELLER'S* TEXTUAL AND HISTORICAL
        APPROACH IS NOT USED, THE STANDARD
        OF REVIEW MUST BE STRICT SCRUTINY. . . . . . . . . . . . . . . . . . . 15

III.    EMPLOYMENT OF A "SUBSTANTIAL BURDEN"
        TEST IN THIS CASE  WOULD BE UNWARRANTED
        AND CONTRARY TO *HELLER*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

iii

# TABLE OF AUTHORITIES

## CASES                                        Page

*Arizona v. Washington*,
434 U.S. 497 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Boumediene v. Bush*,
553 U.S. 723 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Burdick v. Takushi*,
504 U.S. 428 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Clark v. Jeter*,
486 U.S. 456 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Collins v.Youngblood*,
497 U.S. 37 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Crawford v. Washington*,
541 U.S. 36 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*District of Columbia v. Heller*,
554 U.S. 570 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Duncan v. Louisiana*,
391 U.S. 145 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Engquist v. Oregon Dept. of Agriculture*,
553 U.S. 591 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Gideon v. Wainwright*,
372 U.S. 335 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

iv

*Gonzales v. Carhart*,
550 U.S. 124 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Green v. City of Tucson*,
340 F.3d 891, 896 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Heller v. District of Columbia*,
670 F.3d 1244 (D.C. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kachalsky v. County of Westchester*,
701 F.3d 81 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kennedy v. Louisiana*,
554 U.S. 407 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kodak v. Holder*,
342 Fed.Appx. 907 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Lefkowitz v. Turley*,
414 U.S. 70 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Loretto v. Teleprompter Manhattan CATV Corp.*,
458 U.S. 419 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Marbury v. Madison*,
5 U.S. 137 (1803) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*McDonald v. City of Chicago*,
130 S.Ct. 3020 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Nordyke v. King*,
644 F.3d 776 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Nordyke v. King*,
681 F.3d 1041(9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

v

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
460 U.S. 37 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Planned Parenthood of Southeastern Pa. v. Casey*,
505 U.S. 833 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Republican Party of Minnesota v. White*,
536 U.S. 765 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*San Antonio Independent School District*
*v. Rodriguez*, 411 U.S. 1 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Simon & Schuster, Inc. v. Members of the N.Y.*
*State Crime Victims Bd.*, 502 U.S. 105 (1991) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Thomas v. Review Board*,
450 U.S. 707 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Thompson v. Western States Medical Center*,
535 U.S. 357 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Turner Broadcasting System, Inc. v. FCC*,
520 U.S. 180 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Chester*,
628 F.3d 673 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Gaudin*,
515 U.S. 506 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Masciandaro*,
638 F.3d 458 (4th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States  v. Marzzarella*,
614 F.3d 85 (3d. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

vi

*United States v. Miller*,
307 U.S. 174 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Reese*,
627 F.3d 792 (10th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Stevens*,
130 S.Ct. 1577 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Williams*,
616 F.3d 685 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Washington v. Glucksberg*,
521 U.S. 702 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## CONSTITUTION, STATUTES, AND ORDINANCES

U.S. Const., Amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

U.S. Const., Amend. II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S. Const., Amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

U.S. Const., Amend. VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

U.S. Const., Amend. VIII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

U.S. Const., Amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

D.C. Code § 7-2507.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

S. F. Police Code § 4512 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

S. F. Police Code § 613.10(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

## OTHER AUTHORITIES

Transcript of Oral Argument,
*District of Columbia v. Heller*, March 18, 2008 . . . . . . . . . . . . . . . . . . . . . . . . . .  12

## INTEREST OF *AMICI CURIAE*

### California Rifle and Pistol Association Foundation

The California Rifle and Pistol Association (CRPA) Foundation is a non-profit entity classified under section 501(c)(3) of the Internal Revenue Code and incorporated under California law, with headquarters in Fullerton, California. It is affiliated with the California Rifle and Pistol Association, Inc., which has approximately 50,000 members.

The CRPA Foundation seeks to raise awareness about unconstitutional laws, defend and expand the legal recognition of the rights protected by the Second Amendment, promote firearms and hunting safety, protect hunting rights, enhance marksmanship skills of those participating in shooting sports, and educate the general public about firearms. The CRPA Foundation also supports CRPA members, law enforcement, and various charitable, educational, scientific, and other firearms-related public interest activities that support and defend the Second Amendment rights of all law-abiding Americans.

The CRPA Foundation has considerable experience litigating constitutional rights in relation to firearms before federal and state courts, including participation in cases dealing with local restrictions on Second Amendment rights.

-1-

**Independence Institute**

Dedicated to the eternal truths of the Declaration of Independence, the Independence Institute is a 501(c)(3) educational organization based in Denver, Colorado. Founded in 1985, the Independence Institute is a nonpartisan, non-profit public policy research organization dedicated to providing information to concerned citizens, government officials, and public opinion leaders.

Independence Institute Research Director David Kopel has written over a dozen books and more than 80 law review and other scholarly articles, many of them on firearms law and policy. These include the only law school textbook on the subject: NICHOLAS J. JOHNSON, DAVID B. KOPEL, GEORGE MOCSARY & MICHAEL P. O'SHEA, FIREARMS LAW AND THE SECOND AMENDMENT: REGULATION, RIGHTS, AND POLICY (Aspen Publishers 2012).

The Independence Institute's amicus brief was cited in *District of Columbia v. Heller*, 554 U.S. 570, 700-01, 710 (2008) (Breyer, J., dissenting), and *McDonald v. Chicago*, 130 S.Ct. 3020, 3026 n.2, 3115 (2010) (opinion of the Court) & 3106 n.31, 3115 (Stevens, J., dissenting).

**STATEMENT PURSUANT TO RULE 29(c)**

No party's counsel authored this brief in whole or in part. No party or party's counsel, and no person other than *Amici*, their members, or their counsel, contributed

money that was intended to fund preparing or submitting this brief. All parties have consented to the filing of this brief.

## SUMMARY OF ARGUMENT

This *amicus curiae* brief addresses the proper constitutional standard of review to be applied in deciding this appeal.

The *Heller* case employed a textual and historical approach to determine the contours and nature of the Second Amendment right to keep and bear arms. *Heller* did not expressly apply any means-end balancing test or "level of scrutiny." The principles derived from *Heller*'s textual and historical inquiry apply easily to the instant case, since both cases relate to the core right of armed self-defense; to conduct by law-abiding citizens in the home, where that right is the most unassailable; and to firearms and ammunition that are of types typically possessed by law-abiding citizens for lawful purposes. Accordingly, as a standard of review, this court should take a categorical approach as developed in *Heller*, and should determine that the locked- storage requirement (S. F. Police Code § 4512) and ammunition ban (S. F. Police Code § 613.10(g)) unconstitutionally infringe upon the Second Amendment rights of Plaintiffs-Appellants to defend themselves in their homes.

Should this Court employ a "level of scrutiny" rather than a categorical approach as a standard of review, strict scrutiny must be applied. The *McDonald* case

-3-

emphasized that the right to keep and bear arms is fundamental, and strict scrutiny ordinarily applies to fundamental, enumerated rights. Furthermore, *Heller* expressly disapproved of "interest balancing" tests such as intermediate scrutiny, at least where the core right of self-defense is involved, and also rejected rational basis review.

A substantial burden test should not be employed as a standard of review. Because *Heller* ruled out rational basis review, that level of review cannot be applied even in Second Amendment cases in which the burden on the right is not "substantial." In cases where the burden is substantial, heightened scrutiny must be applied under that test. But since intermediate scrutiny has been disapproved by *Heller,* the substantial burden test would necessarily result in strict scrutiny in all cases, and is thus superfluous. In addition, application of a preliminary test (substantial burden) followed by a second, level of scrutiny test, is an unwarranted double restriction on the right of citizens to keep and bear arms.

## ARGUMENT

### I.   THE PROPER STANDARD OF REVIEW IS THE HISTORICAL AND TEXTUAL ANALYSIS EMPLOYED IN *HELLER*, NOT ANY FORM OF MEANS-END SCRUTINY.

The landmark cases of *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010) examined the Second Amendment's text and history to determine the scope, purpose, and character--and

-4-

some of the limits--of the right to keep and bear arms. Those cases did not apply any form of means-end scrutiny, such as strict scrutiny, intermediate scrutiny, or rational basis scrutiny. Indeed, as shown in Part II, below, the majority in *Heller* explicitly rejected interest balancing tests, such as the test proposed by Justice Breyer in dissent, which was essentially a form of intermediate scrutiny. The majority also rejected the application of the rational basis test. *See* Part III, below.

Instead, using text, history, and tradition as guides, these two cases determined that the Second Amendment protects an individual right to keep and bear arms, and that this right is protected against infringement by state and municipal governments, as well as against infringements by the federal government.

In *Heller*, the Supreme Court first conducted an exhaustive textual analysis of the Second Amendment, with particular emphasis on historical meanings. *Heller*, 554 U.S. at 576-603. The Court next reviewed how the right was interpreted, from the time of its adoption down through post-Civil War commentators. *Id.* at 605-19. It then examined its own historical precedents on the Second Amendment, *id.* at 619-26, and reviewed some historical limitations on the right to keep and bear arms. *Id.* at 626-28.

This extensive review in *Heller*, coupled with additional confirmation in *McDonald*, established the following key points:

First, individual self-defense is the "central component of the right" to keep and

-5-

bear arms under the Second Amendment. *Heller*, 554 U.S. at 599; *McDonald*, 130 S.Ct. at 3036. The "core lawful purpose" of the right is self defense. *Heller*, 554 U.S. at 630; *McDonald*, 130 S.Ct. at 3036.

Second, "the need for defense of self, family, and property is most acute" in the home. *Heller*, 554 U.S. at 628. *McDonald* stated that the "central holding" in *Heller* is that "the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *McDonald*, 130 S.Ct. at 3044.

Third, the right extends to "law-abiding, responsible citizens," and the Second Amendment "elevates above all other interests" their right "to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635. Persons other than law-abiding, responsible citizens, such as felons and the mentally ill, may presumably be prohibited from possessing firearms. *Id.* at 626.

Fourth, the Second Amendment protects weapons "typically possessed by law-abiding citizens for lawful purposes . . . ." *Id.* at 625. Relying on *United States v. Miller*, 307 U.S. 174, 179 (1939), the Court held that during any historical period, the "sorts of weapons protected were those 'in common use at the time.'" *Heller*, 554 U.S. at 627.

Fifth, *Heller* recognized that its opinion did not cast doubt on certain

-6-

longstanding regulatory measures that are presumptively lawful, including "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id*. at 626-27 and n. 26.

Sixth, both *Heller* and *McDonald* involved criminal laws passed by local governments in their capacities as lawmakers, not in their proprietary capacities.

The instant case is so close to the facts and principles in *Heller* that the choice (if there is a choice) in the standard of review is not difficult. This case must be decided using the review framework already set forth in *Heller*. Like *Heller*, the instant case involves: 1) restrictions on the "core lawful purpose" of self-defense; 2) imposed within the homes of plaintiffs; 3) who are "law-abiding, responsible citizens"; 4) which impede or prohibit the use of firearms or ammunition that are "typically possessed by law-abiding citizens for lawful purposes" or are "in common use"; 5) that do not involve a longstanding restriction of the type that *Heller* considered to be "presumptively lawful"; and 6) are imposed by a government acting in its regulatory, not proprietary, capacity.

Thus, *Heller* has already determined the principles and method of review under which this case should be decided. This case does not involve the possession of arms for some probably unlawful purpose instead of for self-defense or other lawful uses.

-7-

*United States v. Marzzarella*, 614 F.3d 85 (3d. Cir. 2010). It does not present the issue of carrying a firearm outside the home, which some courts have characterized as a vast "terra incognita." *United States v. Masciandaro*, 638 F.3d 458, 475 (4th Cir. 2011) (Wilkinson, J., for the Court); *see also Kachalsky v. County of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012). It does not involve persons who may not be law-abiding or responsible. *See, e.g, United States v. Chester*, 628 F.3d 673 (4th Cir. 2010) (misdemeanor crimes of domestic violence). *United States v. Reese*, 627 F.3d 792 (10th Cir. 2010) (domestic violence protective orders). It does not involve prohibitions on possession by felons or the mentally ill, *United States v. Williams*, 616 F.3d 685 (7th Cir. 2010), or the other "presumptively lawful" measures listed in *Heller*. The ammunition and firearms sought to be used for defense here are not of a kind "not typically possessed by law-abiding citizens for lawful purposes." E.R. III 225-35, 259-74, 291-305; *see also Kodak v. Holder,* 342 Fed.Appx. 907 (4th Cir. 2009) (unpublished) (federal ban on armor-piercing ammunition not invalid under Second Amendment). It is also not a case in which a government is acting in its proprietary rather than lawmaking capacity. *Nordyke v. King*, 644 F.3d 776 (9th Cir. 2011) ("*Nordyke V*").

In short, there is no need to develop a standard of review different from the methodology employed in *Heller*, even if that were permissible. Here, this Court is

on familiar ground, already explored and mapped by *Heller*. Indeed, the fundamental principles are so similar that only a couple of commonsense determinations need to be made to bring this case within the express ambit of *Heller*.

If it is true that the provisions of the locked-storage law may impede the exercise of the core right to self-defense within the home, and there are no substantial historical traditions or textual bases for requiring guns to be locked in the home, then deciding the locked storage issue is simply a logical corollary of *Heller*. S. F. Police Code § 4512 impinges on the right of self-defense within the home, and is categorically unconstitutional.

Similarly, if it is true that expanding or hollowpoint ammunition is commonly used for purposes of defense within the home, and there are no textual or founding-era historical justifications for banning ordinary ammunition, then deciding the ammunition issue is also a logical corollary of *Heller*. S. F. Police Code § 613.10(g) impinges on the core right of self-defense within the home, and is categorically unconstitutional.

In short, there is a simple guide to determining the constitutional standard of review in this case: follow *Heller*. There is no justification for discarding the principles that *Heller* developed after a careful textual and historical review. Neither is there any basis for substituting a standard of review that was not approved by *Heller*

or that was expressly rejected by *Heller*.

*Heller* expressly declined to apply any level of "means-end" interest balancing, such as strict scrutiny or intermediate scrutiny, to the handgun ban and "safe storage" statutes at issue in that case. Instead, the Supreme Court took a categorical approach in striking down an infringement of the core right to keep and bear arms:

> The handgun ban amounts to a prohibition of an entire class of "arms" that is overwhelmingly chosen by American society for that lawful purpose. The prohibition extends, moreover, to the home, where the need for defense of self, family, and property is most acute. Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family," . . . would fail constitutional muster.

*Heller*, 554 U.S. at 628-29.

*McDonald* observed that "Self-defense is a basic right, recognized by many legal systems from ancient times to the present day, and in *Heller*, we held that individual self-defense is 'the central component' of the Second Amendment right." *McDonald*, 130 S. Ct. at 3036 (citation omitted). Accordingly, it is not a right that may be balanced away. In *Heller*, Justice Breyer in dissent argued that Second Amendment rights should be subject to an interest-balancing test. *Heller*, 554 U.S. at 689 (Breyer, J., dissenting). *Heller* rejected that approach, stating:

> We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding "interest-balancing" approach. The very enumeration of the right takes out of the hands of

> government – even the Third Branch of Government – the power to decide on a case-by-case basis whether the right is really worth insisting upon.

*Id*. at 634 (majority opinion).

Similarly, without any balancing or means-end scrutiny, *McDonald* upheld the right of residents to enhance their safety by having arms for their defense, noting that "the Second Amendment right protects the rights of minorities and other residents of high-crime areas whose needs are not being met by elected public officials." *McDonald*, 130 S.Ct. at 3049.

*Heller* emphatically stated that the Second Amendment "*elevates above all other interests* the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635 (emphasis added). Because the Second Amendment right to use arms in defense of one's home is elevated above all other interests, there is no need to examine the nature of the interests put forth by the City that would allegedly trump that fundamental right.

During oral argument in the *Heller* case, Chief Justice Roberts cast doubt on whether overly refined standards such as intermediate scrutiny should be injected into Second Amendment jurisprudence. He questioned counsel, who was proposing intermediate scrutiny as the standard, as follows:

> Well, these various phrases under the different standards that are proposed, "compelling interest," "significant

-11-

> interest," "narrowly tailored," none of them appear in the
> Constitution; and I wonder why in this case we have to
> articulate an all-encompassing standard. Isn't it enough to
> determine the scope of the existing right that the
> amendment refers to, look at the various regulations that
> were available at the time, including you can't take the gun
> to the marketplace and all that, and determine how these --
> how this restriction and the scope of this right looks in
> relation to those?

Transcript of Oral Argument, *District of Columbia v. Heller*, March 18, 2008, at 44.

The use of balancing tests, rather than categorical tests based on text, history, and tradition, can prove dangerous to constitutional rights. As the Court observed in *Crawford v. Washington*, 541 U.S. 36, 67-68 (2004), by "replacing categorical constitutional guarantees with open-ended balancing tests, we do violence to their design. Vague standards are manipulable."

Dissenting in *Heller v. District of Columbia*, 670 F.3d. 1244, 1274 n.6 (D.C. Cir. 2011) (*Heller II*), Judge Kavanaugh noted that:

> Even in the First Amendment case law, which the majority opinion here
> looks to for guidance, the Court has not used strict or intermediate
> scrutiny when considering bans on categories of speech. In *United States
> v. Stevens*, the Court echoed *Heller*: "The First Amendment's guarantee
> of free speech does not extend only to categories of speech that survive
> an ad hoc balancing of relative social costs and benefits. The First
> Amendment itself reflects a judgment by the American people that the
> benefits of its restrictions on the Government outweigh the costs. Our
> Constitution forecloses any attempt to revise that judgment simply on the
> basis that some speech is not worth it. The Constitution is not a
> document 'prescribing limits, and declaring that those limits may be
> passed at pleasure.' " 130 S.Ct. 1577, 1585 (2010) (*quoting Marbury v.*

-12-

*Madison*, 5 U.S. 137, 178 (1803)); *see also Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 125 (1991) (Kennedy, J., concurring) (When the "regulated content has the full protection of the First Amendment," that "is itself a full and sufficient reason for holding the statute unconstitutional. In my view it is both unnecessary and incorrect to ask whether the State can show that the statute is necessary to serve a compelling state interest and is narrowly drawn to achieve that end.") (internal quotation marks omitted).

In fact, many constitutional rights are analyzed without the application of levels of scrutiny such as strict scrutiny or intermediate scrutiny. *See, e.g., Kennedy v. Louisiana*, 554 U.S. 407 (2008) (8th Amendment Cruel and Unusual Punishments Clause); *Boumediene v. Bush*, 553 U.S. 723 (2008) (Habeas Corpus Clause; 6th Amendment Confrontation Clause); *United States v. Gaudin*, 515 U.S. 506 (1995) (6th Amendment Jury Trial Clause); *Collins v. Youngblood*, 497 U.S. 37 (1990) (Ex Post Facto Clause); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) (5th Amendment Takings Clause); *Arizona v. Washington*, 434 U.S. 497 (1978) (5th Amendment Double Jeopardy Clause); *Lefkowitz v. Turley*, 414 U.S. 70 (1973) (5th Amendment Self-incrimination Clause); *Gideon v. Wainwright*, 372 U.S. 335 (1963) (6th Amendment Assistance of Counsel Clause).

It is especially noteworthy that the locked-storage requirement in *Heller* was struck down categorically. The *Heller* court noted that District of Columbia law (D.C. Code § 7-2507.02) "also requires that any lawful firearm in the home be disassembled or bound by a trigger lock at all times, rendering it inoperable." *Heller*, 554 U.S. at

-13-

628. Because that requirement impinged on the core right of self-defense, the Court held it unconstitutional, without the use of any balancing test. The fact that in *Heller* the firearm was both legally and practically unavailable for immediate self-defense, whereas in the instant case the firearm will nearly always be practically unavailable for immediate self-defense, does not change the core nature of the right that is infringed, or the type of constitutional test to be applied.

This case, like *Heller*, involves the core right of self-defense. As *Heller* stated, the Second Amendment "is the very product of an interest-balancing by the people," and no interest balancing need be conducted anew. *Heller*, 554 U.S. at 635. The Second Amendment "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* Because no interest on the part of San Francisco can overcome that right, the restrictions at issue in this case should be struck down as a categorical violation of the Second Amendment.

-14-

## II.    IF *HELLER*'S TEXTUAL AND HISTORICAL APPROACH IS NOT USED, THE STANDARD OF REVIEW MUST BE STRICT SCRUTINY.

The Supreme Court in *McDonald* explicitly held, without any qualification, that "the right to keep and bear arms is *fundamental* to our scheme of ordered liberty," and is "deeply rooted in this Nation's history and tradition . . . ." *McDonald*, 130 S.Ct. at 3036 (plurality opinion) (emphasis added).

*McDonald* repeatedly characterized the right as fundamental in holding that the Second Amendment is incorporated through the Due Process Clause of the Fourteenth Amendment. *Id*. at 3036, 3050. It noted that Blackstone's view that the arms right is fundamental was "shared by the American colonists." *Id*. at 3037. "The right to keep and bear arms was considered no less fundamental by those who drafted and ratified the Bill of Rights." *Id*. Its inclusion in the Bill of Rights "is surely powerful evidence that the right was regarded as fundamental in the sense relevant here." *Id*. at 3037. *McDonald* noted that the efforts of the Reconstruction Congress "to safeguard the right to keep and bear arms demonstrate that the right was still recognized to be fundamental." *Id*. at 3040. "[T]he Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." *Id*. at 3042. *McDonald* concluded that the Second Amendment is "a provision of the Bill of Rights that protects a right that is fundamental from an American perspective" and thus

"applies equally to the Federal Government and the States." *Id.* at 3050.

Justice Thomas, the fifth vote in support of the decision in *McDonald*, stated unmistakably at the outset of his concurrence that:

> the plurality opinion concludes that the right to keep and bear arms applies to the States through the Fourteenth Amendment's Due Process Clause because it is "*fundamental*" to the American "scheme of ordered liberty," *ante*, at 3036 (*citing Duncan v. Louisiana*, 391 U.S. 145, 149 (1968)), and "'deeply rooted in this Nation's history and tradition,'" *ante*, at 3036 (*quoting Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). *I agree with that description of the right.*

*McDonald*, 130 S.Ct. at 3059 (Thomas, J., concurring) (emphasis added).

The Second Amendment thus recognizes an explicitly-protected, fundamental right, restrictions on which are subject to strict scrutiny. A right is "fundamental" if it is "explicitly or implicitly protected by the Constitution, thereby requiring strict judicial scrutiny." *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 17, 33 (1973). "[C]lassifications affecting fundamental rights . . . are given the most exacting scrutiny." *Clark v. Jeter*, 486 U.S. 456, 461 (1988). *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 54 (1983) ("strict scrutiny [is] applied when government action impinges upon a fundamental right protected by the Constitution"). "Under the strict-scrutiny test," the government has the burden to prove that a restriction "is (1) narrowly tailored, to serve (2) a compelling state interest." *Republican Party of Minnesota v. White*, 536 U.S. 765, 774-75 (2002). It

-16-

is often held that, to survive such scrutiny, the law must be the "least restrictive means" to serve that compelling state interest. *Thomas v. Review Board*, 450 U.S. 707, 718 (1981).

While some post-*Heller* cases have applied intermediate scrutiny, they generally have not done so in cases involving firearms in common use, possessed by law-abiding citizens inside the home for the core purpose of self-defense. *See* Part I, above.

More importantly, the Supreme Court in *Heller* rejected outright an interest-balancing test proposed by Justice Breyer, which is virtually indistinguishable from intermediate scrutiny. As the majority in *Heller* noted:

> [Justice Breyer] criticizes us for declining to establish a level of scrutiny for evaluating Second Amendment restrictions. He proposes, explicitly at least, none of the traditionally expressed levels (strict scrutiny, intermediate scrutiny, rational basis), but rather a judge-empowering "interest-balancing inquiry" that "asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests."

*Heller*, 554 U.S. at 634.

Justice Breyer's proposed interest balancing test is nothing more than intermediate scrutiny by another name. His test proposes to balance the "burden" on a protected right against "important" governmental interests–the same test used in intermediate scrutiny. In fact, in proposing his test, Justice Breyer's dissent relied on

-17-

cases such as *Burdick v. Takushi*, 504 U.S. 428 (1992), *Turner Broadcasting System, Inc. v. FCC*, 520 U.S. 180 (1997), and *Thompson v. Western States Medical Center*, 535 U.S. 357 (2002), which are undeniably intermediate scrutiny cases. *See Heller*, 554 U.S. at 690 (Breyer, J., dissenting).

*McDonald* reinforced the proposition that interest balancing should not be employed, observing that: "In *Heller* . . . we expressly rejected the argument that the scope of the Second Amendment right should be determined by judicial interest balancing . . . ." *Id.* at 3047, *citing Heller*, 128 S.Ct. at 2820-2821 (554 U.S. at 632-35). Whether it is precisely identical to Justice Breyer's proposed test, intermediate scrutiny is undeniably an interest-balancing test, and such tests were expressly rejected in both *Heller* and *McDonald.*

If any of the traditional levels of scrutiny are applied in this case, the test can thus only be strict scrutiny, which is in any event the proper test for protecting the central core of a fundamental, enumerated right.

## III. EMPLOYMENT OF A "SUBSTANTIAL BURDEN" TEST IN THIS CASE WOULD BE UNWARRANTED AND CONTRARY TO *HELLER*.

In the *en banc* decision in *Nordyke v. King*, 681 F.3d 1041(9th Cir. 2012), this Court declined to specify a constitutional standard of review or level of scrutiny that would apply to the Second Amendment challenge in that case. The reason was that the defendants had essentially given up their original attempt to ban gun shows on

-18-

county property, and had instead granted permission with only trivial restrictions. Thus, it was possible to decide the case without specifying the standard of review.

Four judges of the *en banc* court, however, suggested that the proper standard of review, for the facts of that case at least, would be a "substantial burden" test, originally outlined in the panel's decision in *Nordyke V*.  *See Nordyke v. King*, 681 F.3d 1041, 1045-46 (9th Cir. 2012) (*en banc*).  Two of those four judges also believed that an intermediate scrutiny test would apply in conjunction with (or as the result of) the substantial burden test.  *Id.* at 1046.

*Amici* note that the *Nordyke V* decision was vacated by the *en banc* decision, and thus is inoperative and has no precedential authority.  However, because several judges concurring in the *en banc* decision suggested that such a test might apply in at least some Second Amendment cases, it is important to point out why that proposed test is inconsistent with *Heller*, and compounds rather than solves the problems it purports to address.

*Nordyke V* states at the outset that "Because the Supreme Court has yet to articulate a standard of review in Second Amendment cases, that task falls to the courts of appeals and the district courts."  *Nordyke V*, 644 F.3d at 782.  Yet it is not quite the case that the Supreme Court omitted to articulate a standard of review.  It simply did not apply a means-end balancing test, such as strict scrutiny or intermediate scrutiny,

in which a governmental interest is weighed against the degree of burden on the constitutional right. Instead, as shown above, the Court engaged in an inquiry that focused on the text of the Second Amendment, the history of that Amendment and the right to keep and bear arms, and our national traditions, including "longstanding prohibitions" that the Court considered "presumptively lawful regulatory measures. . . ." *Heller*, 554 U.S. at 626-27, n. 26.

*Nordyke V* involved a Second Amendment challenge that was considerably different from the facts of *Heller*, most notably because it involved the county acting in its proprietary capacity as owner of public lands, rather than in its general lawmaking capacity. Thus, there may have been some perceived necessity in that case to try to develop a novel standard of review. But whatever the need for that effort in *Nordyke V*, there is no reason why the *Heller* analysis cannot be applied directly in the instant case. That is especially true because, like *Heller,* this case involves restrictions on the use of firearms and ammunition that are commonly used by law-abiding citizens for lawful purposes, involves the core right of self-defense, and involves the exercise of that core right in the place where it is most inviolable--in the home.

The suggestion in *Nordyke V* that the *Heller* case applied a "substantial burden" test does not square with the text of the *Heller* opinion. *Heller* never mentioned any "substantial burden" test, which it presumably would have done had it been applying

-20-

such a test.  Indeed, the words "substantial burden" nowhere appear in the text of *Heller*, either as a formal standard of review, or in evaluating the facts, history, or issues in that case.

In fact, the word "burden" appears only three times in the majority opinion.  The first instance occurs in a quotation from Justice Breyer's dissent, which the majority opinion was refuting.  *Heller*, 554 U.S. at 632.  The second use of the word was again in the context of refuting a contention by Justice Breyer.  Justice Breyer had cited a few statutes from the founding era that were principally designed for fire-safety purposes.  Those laws were cited not as part of a constitutional standard of review, but only to show that there was allegedly historical precedent for laws of a kind akin to the District's laws.  The majority responded that  "Nothing about those fire-safety laws undermines our analysis; they do not remotely burden the right of self-defense as much as an absolute ban on handguns."  *Id.*  The  analysis in question was not a  "substantial burden" analysis, but an *historical* analysis.

The third instance also appears in a quote from Justice Breyer's dissent, proposing that the extent of the burden on the right be balanced against the alleged beneficial effects of the restriction--a test that the Supreme Court majority was at pains to refute.

The "substantial burden" test as proposed in *Nordyke V* would also violate the

-21-

clear precepts of *Heller*. The *Nordyke V* opinion noted that "It has been suggested that only regulations which substantially burden the right to keep and to bear arms should receive heightened scrutiny [citations omitted]," and that *Heller* and *McDonald* themselves suggest "that heightened scrutiny does not apply unless a regulation substantially burdens the right to keep and to bear arms for self-defense." *Nordyke V*, 644 F.3d at 782-83. *Amici* respectfully submit that neither *Heller* nor *McDonald* said anything about whether or when heightened scrutiny should apply in Second Amendment cases, that neither of those cases expressly applied a level of scrutiny, and that neither proposed a "substantial burden" test.

Nevertheless, *Nordyke V* concluded that: "only regulations which substantially burden the right to keep and to bear arms trigger heightened scrutiny under the Second Amendment." *Nordyke V*, 644 F.3d at 786. This statement is followed by a footnote which states that "We need not decide today precisely what type of heightened scrutiny applies to laws that substantially burden Second Amendment rights." *Id.* at n. 9.

Application of a "substantial burden" test as outlined in *Nordyke V* would either violate *Heller*, or embroil the court in the very difficulties that the "substantial burden" test is apparently meant to avoid. *Nordyke V* proposes that if there is no substantial burden on Second Amendment rights, rational basis scrutiny would be appropriate, noting that in "a variety of contexts, the Court applies mere rational basis scrutiny to

-22-

laws that regulate, but do not significantly burden, fundamental rights." *Id.* at 785-86

(relying principally on abortion cases).

But *Heller* vigorously rejected the notion that rational basis scrutiny would be

proper in Second Amendment cases:

> [R]ational-basis scrutiny is a mode of analysis we have used when
> evaluating laws under constitutional commands that are themselves
> prohibitions on irrational laws. *See, e.g., Engquist v. Oregon Dept. of
> Agriculture*, 553 U.S. 591, ___ (2008). In those cases, "rational basis" is
> not just the standard of scrutiny, but the very substance of the
> constitutional guarantee. Obviously, the same test could not be used to
> evaluate the extent to which a legislature may regulate a specific,
> enumerated right, be it the freedom of speech, the guarantee against
> double jeopardy, the right to counsel, or the right to keep and bear arms.
> . . . If all that was required to overcome the right to keep and bear arms
> was a rational basis, the Second Amendment would be redundant with the
> separate constitutional prohibitions on irrational laws, and would have no
> effect.

*Heller*, 554 U.S. at 628 n.27.

Because the rational basis test cannot "be used to evaluate the extent to which

a legislature may regulate a specific, enumerated right, . . . [including] the right to keep

and bear arms," *id.*, any application of a "substantial burden" test which arrived at

rational basis scrutiny as the standard to be employed would violate the clear command

of *Heller*.

That leaves only some form of heightened scrutiny to be applied as the result of

the substantial burden test. Although *Nordyke V* was agnostic on the "precise" form

-23-

of heightened scrutiny that would be used, *Nordyke V*, 644 F.3d at 786 n.9, heightened scrutiny generally embraces either strict scrutiny or some form of intermediate scrutiny. Yet, as shown in Part II, above, *Heller* also discountenanced any "interest balancing" test, which would include intermediate scrutiny (at least where the core right of self-defense is implicated, and perhaps in all Second Amendment cases).

If a level of scrutiny is to be applied, and rational basis and intermediate scrutiny are ruled out by *Heller*, that leaves only strict scrutiny. But the whole purpose of the substantial burden test proposed in *Nordyke V* was to avoid the application of strict scrutiny in all Second Amendment cases. *See Nordyke V*, 644 F.3d at 784-85 (contending that "Applying strict scrutiny to every gun regulation would require courts to assess the effectiveness of a myriad of gun-control laws," and "applying strict scrutiny to every gun-control regulation would require courts routinely to make precisely those types of government interest assessments" that *Heller* disapproved of as part of interest balancing tests).

Consequently, the substantial burden test leads directly back to application of strict scrutiny in all cases, which is what the *Nordyke V* opinion sought to avoid.

That the "substantial burden" test proposed in *Nordyke V* leads inexorably to application of strict scrutiny should not perhaps be surprising. As recognized by this Court's own constitutional jurisprudence in areas outside the Second Amendment,

-24-

"[W]here the statute in question *substantially burdens fundamental rights*, such as the right to vote . . . *strict scrutiny applies* and the statute will be upheld only if the state can show that the statute is narrowly drawn to serve a compelling state interest." *Green v. City of Tucson*, 340 F.3d 891, 896 (9th Cir. 2003) (emphasis added). The Second Amendment is not a second class right, *McDonald*, 130 S.Ct. at 3043, and a substantial burden on the right to keep and bear arms should cause strict scrutiny to apply directly, just as with other fundamental rights.

The substantial burden standard as outlined in *Nordyke V* is also unjustified because it requires persons with constitutionally protected rights to be first subjected to a preliminary standard of review (substantial burden), and then have their rights reviewed a second time under a "level of scrutiny" analysis. As part of its support for a substantial burden test, the *Nordyke V* opinion cited two abortion cases that employ an "undue burden" test. *Gonzales v. Carhart*, 550 U.S. 124 (2007); *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992). Yet these cases do not subject abortion rights to the double-layered review contemplated by *Nordyke V* for Second Amendment rights. In *Gonzales* and *Planned Parenthood*, if a law imposes an undue burden on abortion rights, the law is declared unconstitutional. That is the end of the constitutional inquiry, not the beginning of it.

*Amici* also note that, unlike abortion rights, Second Amendment rights are

-25-

codified in the text of the Constitution. As *Heller* did, a reviewing court may begin with the actual text of the codified right, supplemented by the historical understanding of the right. To review cases involving the right to keep and bear arms under a substantial burden test, followed by a "level of scrutiny" test, would take the court and parties not just one remove from the text of the Second Amendment, but two removes. *Amici* submit that text and history are a more accurate guide to the contours of the right to keep and bear arms, and respectfully suggest that the textual and historical principles distilled in *Heller* and *McDonald*, not a substantial burden test, should be employed in reviewing the San Francisco Police Code sections at issue in this case.

## CONCLUSION

For the reasons stated above, the principles set forth in *Heller* should be applied directly in this case, and the decision below should be reversed.


/s/ Dan M. Peterson

| | |
|---|---|
| David B. Kopel | Dan M. Peterson* |
| Independence Institute | Dan M. Peterson PLLC |
| 727 E. 16th Ave. | 3925 Chain Bridge Road, Suite 403 |
| Denver, Colorado 80203 | Fairfax, Virginia 22030 |
| Telephone: (303) 279-6536 | Telephone: (703) 352-7276 |
| | dan@danpetersonlaw.com |
| | *Counsel of Record |

Counsel for *Amici Curiae*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the attached opening brief complies with Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure.  According to the word count feature of the word-processing system used to prepare the brief, it contains 6,056 words, exclusive of those matters that may be omitted under Rule 32(a)(7)(B)(iii).

I further certify that the attached brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6).  It was prepared in a proportionately spaced typeface using 14-point Times New Roman font in WordPerfect X3.

Date: February 14, 2013          /s/ Dan M. Peterson
                                 Dan M. Peterson

                                 Counsel for *Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2013, an electronic PDF of foregoing Brief of *Amici Curiae* California Rifle and Pistol Association Foundation and Independence Institute in Support of Plaintiffs-Appellants and in Support of Reversal was uploaded to the Court's CM/ECF system, which will automatically generate and send by electronic mail a Notice of Docket Activity to all registered attorneys participating in the case. Such notice constitutes service on those registered attorneys.

/s/ Dan M. Peterson
Dan M. Peterson