No. 12-17803
================================

**In the**
**United States Court of Appeals for the Ninth Circuit**

————————————

ESPANOLA JACKSON, *ET AL.*,
*Plaintiffs-Appellants*,
v.

CITY AND COUNTY OF SAN FRANCISCO, *ET AL.*,
*Defendants-Appellees*.

————————————

**On Appeal from the**
**United States District Court for**
**the Northern District of California**

————————————

**Brief *Amicus Curiae* of Gun Owners of America, Inc., Gun Owners**
**Foundation, U.S. Justice Foundation, The Lincoln Institute for Research**
**and Education, The Abraham Lincoln Foundation for Public Policy**
**Research, Institute on the Constitution, Conservative Legal Defense and**
**Education Fund, and Policy Analysis Center**
**in Support of Petition for Rehearing *en Banc***

————————————

MICHAEL CONNELLY
  U.S. JUSTICE FOUNDATION
  932 D Street, Ste. 2
  Ramona, CA 92065
*Attorney for Amicus Curiae*
  *U.S. Justice Foundation*

HERBERT W. TITUS*
ROBERT J. OLSON
WILLIAM J. OLSON
JEREMIAH L. MORGAN
JOHN S. MILES
  WILLIAM J. OLSON, P.C.
  370 Maple Avenue W., Suite 4
  Vienna, Virginia 22180-5615
  (703) 356-5070
*Attorneys for Amici Curiae*

*Attorney of Record
July 3, 2014

================================

## DISCLOSURE STATEMENT

The *amici curiae* herein, Gun Owners of America, Inc., Gun Owners Foundation, U.S. Justice Foundation, The Lincoln Institute for Research and Education, The Abraham Lincoln Foundation for Public Policy Research, Inc., Institute on the Constitution, Conservative Legal Defense and Education Fund, and Policy Analysis Center, through their undersigned counsel, submit this Disclosure Statement pursuant Federal Rules of Appellate Procedure 26.1, 29(c).

These *amici curiae*, other than Institute on the Constitution, are non-stock, nonprofit corporations, none of which has any parent company, and no person or entity owns them or any part of them. *Amicus* Institute on the Constitution is not a publicly traded corporation, nor does it have a parent company which is a publicly traded corporation. The *amici curiae* are represented herein by Herbert W. Titus, who is counsel of record, Robert J. Olson, William J. Olson, Jeremiah L. Morgan, and John S. Miles, of William J. Olson, P.C., 370 Maple Avenue West, Suite 4, Vienna, Virginia 22180-5615. *Amicus* U.S. Justice Foundation also is represented herein by Michael Connelly, 932 D Street, Suite 2, Ramona, California 92065.

    s/Herbert W. Titus    
Herbert W. Titus

# TABLE OF CONTENTS

DISCLOSURE STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTEREST OF *AMICI CURIAE*. . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

I.    THE PANEL WRONGFULLY ASSUMED THAT THE SECOND
      AMENDMENT RIGHT TO KEEP AND BEAR ARMS IS
      GOVERNED BY FIRST AMENDMENT "CASELAW". . . . . . . . . 2

      A.    The Panel Below Wrongfully Applied the First Amendment
            Doctrine of "Time, Place and Manner". . . . . . . . . . . . . . . . 2

      B.    The Right to Keep and Bear Arms Is Not Analogous to the
            First Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.   THE SAN FRANCISCO ORDINANCES VIOLATE THE
      SECOND AMENDMENT AS ELUCIDATED IN HELLER. . . . . . . 7

      A.    The Panel Treats Heller as a Ceiling, Rather than a Floor. . . . . 8

      B.    The San Francisco Regulations Infringe the Right to Keep and
            Bear Arms Recognized in Heller. . . . . . . . . . . . . . . . . . . . 10

III.  PRETENDING TO WEIGH THE COMPETING INTERESTS,
      THE PANEL SIMPLY DEFERRED TO THE CITY. . . . . . . . . . . . 14

      A.    The Panel's Two Step Permits It to Sidestep Heller. . . . . . . . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ii

# TABLE OF AUTHORITIES

**UNITED STATES CONSTITUTION**

Amendment I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, *passim*

Amendment II. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, *passim*

**CASES**

City of Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986). . . . . . . . . . 3

District of Columbia v. Heller, 554 U.S. 570 (2008). . . . . . . . . . . 2, *passim*

Ezell v. City of Chicago, 651 F.3d 684 (7th Cir. 2011). . . . . . . . . . . . . . 4, 6

Heller v. District of Columbia, 670 F.3d 1244 (D.C. Cir. 2011). . . . . . . . . 10

Marbury v. Madison, 5 U.S. 137 (1803). . . . . . . . . . . . . . . . . . . . . 20

Martin v. City of Struthers, 319 U.S. 141 (1943). . . . . . . . . . . . . . . . . 3

McCullen v. Coakley, 573 U.S. ___ (June 26, 2014), No. 12-1168. . . . . . . . 3

McDonald v. City of Chicago, 561 U.S. ___, 130 S.Ct. 3020 (2010). . . 2, 4, 6

Stanley v. Georgia, 394 U.S. 557 (1969). . . . . . . . . . . . . . . . . . . . . . 3

Thomas v. Chicago Park Dist., 534 U.S. 316 (2002). . . . . . . . . . . . . . . 10

Ward v. Rock Against Racism, 491 U.S. 781 (1989). . . . . . . . . . . . . . 2, 3

**MISCELLANEOUS**

J. Nowak, R. Rotunda & J. Young, Constitutional Law, 3d ed., West
(1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A. Rostron, "Justice Breyer's Triumph in the Third Battle Over the Second
Amendment," 80 G.W. LAW REV. 3, p. 704 (2012). . . . . . . . . . . . . 7

Webster's Encyclopedic Unabridged Dictionary of the English Language,
Gramercy Books, New York, 1989. . . . . . . . . . . . . . . . . . . . 7, 11, 13

## INTEREST OF *AMICI CURIAE*

Gun Owners of America, Inc., Gun Owners Foundation, U.S. Justice Foundation, The Lincoln Institute for Research and Education, The Abraham Lincoln Foundation for Public Policy Research, Inc., Conservative Legal Defense and Education Fund, and Policy Analysis Center are nonprofit organizations, exempt from federal taxation under sections 501(c)(3) or 501(c)(4) of the Internal Revenue Code, and each is dedicated, *inter alia*, to the correct construction, interpretation, and application of the law, with particular interest in constitutional provisions recognizing individual rights to firearm ownership and use.[1] Institute on the Constitution is an educational organization. These *amici* have filed *amicus curiae* briefs in other federal litigation involving such Second Amendment issues, including District of Columbia v. Heller, 554 U.S. 570 (2008) and McDonald v. City of Chicago, 561 U.S. __, 130 S.Ct. 3020 (2010).[2]

---

[1]     *Amici* requested and received the consents of the parties to the filing of this brief *amicus curiae*, pursuant to Rule 29(a), Federal Rules of Appellate Procedure.

[2]     A more complete description of these *amici* appears in their brief *amicus curiae* filed in Heller, pp. 1-2 (Feb. 11, 2008), http://www.lawand freedom.com/site/constitutional/DCvHellerAmicus.pdf, and in McDonald, pp. 1-4 (Nov. 23, 2009), http://www.lawandfreedom.com/site/firearms/McDonald Amicus.pdf.

# ARGUMENT

## I. THE PANEL WRONGFULLY ASSUMED THAT THE SECOND AMENDMENT RIGHT TO KEEP AND BEAR ARMS IS GOVERNED BY FIRST AMENDMENT "CASELAW."

### A. The Panel Below Wrongfully Applied the First Amendment Doctrine of "Time, Place and Manner."

Purporting to act upon the "suggestion" of Heller[3] and McDonald,[4] the panel assumed that the Second Amendment right to keep and bear arms is governed by "strong analogies to the Supreme Court's free-speech caselaw." Jackson v. San Francisco, 746 F.3d 953, 960 (9th Cir. 2014). Having begun its analysis on a perceived "suggestion," rather than on the actual words of the Second Amendment guarantee, the panel quickly went astray, applying a First Amendment doctrine that is not even remotely analogous to this case.

Searching free speech case law to determine the level of scrutiny to be employed to examine the San Francisco ordinance — an ordinance which, by its terms, applies only inside of Jackson's **home** — the panel lit upon the First Amendment lesser scrutiny doctrine of "time, place, or manner"[5] — which

---

[3] District of Columbia v. Heller, 554 U.S. 570 (2008).

[4] McDonald v. Chicago, 561 U.S. ___, 130 S.Ct. 3020 (2010).

[5] See Jackson, 746 F.3d at 961, citing Ward v. Rock Against Racism, 491 U.S. 781 (1989) (city guideline controlling noise level in public park).

2

applies only to "free speech" in **public places**. *See* J. Nowak, R. Rotunda & J. Young, Constitutional Law, 3d ed., West (1986), § 16.47. *See also* McCullen v. Coakley, 573 U.S. ___ (June 26, 2014), No. 12-1168, slip. op. at 9 (citing Ward, 491 U.S. at 791) and 19 (citing Ward, 491 U.S. at 799). If a First Amendment "case law" analogue had truly been sought, the panel would have applied Stanley v. Georgia, 394 U.S. 557 (1969) which ruled that the States' "power to regulate [even] obscenity ... simply does **not** extend to **mere possession** by the individual **in the privacy of his own home**." *Id.* at 568 (emphasis added).

Instead, the panel analogized the San Francisco ordinance intruding upon the privacy of the home to the exercise of a city's zoning power governing adult theaters — to which deferential scrutiny had been applied.[5] But that doctrinal deference is wholly inapplicable even to free speech activities in one's home, where the homeowner — not the government — determines what is read, watched, and listened to. *See* Martin v. City of Struthers, 319 U.S. 141 (1943).

---

[5]     *See* Jackson at 965-66, citing City of Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986).

The panel's dependence upon the First Amendment's "time, place, and manner" doctrine is pervasive, and a totally inappropriate analogue to Second Amendment activities in the privacy of one's home. *See* Pet. at 2, 6-9, and 17.

**B.    The Right to Keep and Bear Arms Is Not Analogous to the First Amendment.**

Relying exclusively upon the Seventh Circuit's analysis in <u>Ezell</u> v. <u>City of Chicago</u>, 651 F.3d 684 (7th Cir. 2011), the panel claims that its application of First Amendment doctrines to Second Amendment cases is sanctioned by three passages from Justice Scalia's majority opinion in <u>Heller</u>, and one from Justice Alito's plurality opinion in <u>McDonald</u>.  However, none of these passages even comes close to supporting the panel's approach.

In <u>Heller</u>, Justice Scalia referred to the First Amendment to reinforce his view that just as the First Amendment today protects modern forms of communication, the Second Amendment secures not only the "bearable arms" that existed at the nation's founding.  *Id*. at 582.  A similar reference was also made to the Fourth Amendment, but neither establishes the proposition that courts are "to adapt First Amendment doctrine to the Second Amendment context."  *See* <u>Jackson</u> at 960.

4

The <u>Heller</u> Court also observed that just as the "First Amendment's right of free speech" is not unlimited, neither is the Second Amendment right to keep and bear arms. <u>Heller</u> at 595. But the Court did not say, or even suggest, that the courts should impose limits on the Second Amendment by examination of limits on the First. To the contrary, most of the Court's opinion provided an extensive analysis of the Second Amendment's unique text and history to elucidate the right to keep and bear arms. *See id*. at 576-627.

Finally, the <u>Heller</u> Court affirmed that the exclusion of obscenity and libel from First Amendment protection was not subject to judicial interest balancing, the balancing having already been made by the people. *Id*. at 635. In no way can this passage be read to affirm that First Amendment interest balancing also applies to the Second Amendment. To the contrary, the <u>Heller</u> majority expressly rejected any form of balancing, which was derided as a judge-empowering doctrine. <u>Heller</u> at 634-35, 719. Indeed, Chief Justice Roberts, reacting against the Solicitor General's attempt to apply a First Amendment balancing test, stating: "Isn't it enough to determine the scope of the existing right that the amendment refers to, look at the various regulations that were available at the time…. I'm not sure why we have to articulate some intricate

5

standard … that appl[ies] in the First Amendment [which] kind of developed over the years as sort of baggage…." <u>Heller</u> Oral argument at 44.

Justice Alito's plurality opinion in <u>McDonald</u> reinforces <u>Heller</u>'s rejection of First Amendment doctrinal balancing in Second Amendment cases. Twice, Justice Alito stated that <u>Heller</u> rejected "judicial interest balancing." *See id*. at 3047 and 3050. Both passages are ignored by the panel. Instead, the panel relied upon a passage in <u>McDonald</u> (130 S.Ct. at 3045) that relates solely to whether the Second Amendment was incorporated by the Fourteenth. *See* <u>Ezell</u>, 651 F.3d at 706.

Not only do <u>Heller</u> and <u>McDonald</u> **not** "suggest" that the First Amendment judicial scrutiny test applies equally to the Second Amendment, they mandate the opposite conclusion. Indeed, Justice Alito resoundingly rejects the idea that any constitutional guarantee, including the Second Amendment, is subject to judicial weighing to determine if an individual's freedoms outweigh the threat to public safety. <u>McDonald</u>, 130 S.Ct. at 3045.

The net effect of the panel's tortured approach is to reject the Supreme Court's decisions in <u>Heller</u> and <u>McDonald</u>, and to adopt the interest balancing approach unsuccessfully urged by Justice Breyer. *See, e.g.*, A. Rostron, "Justice

6

Breyer's Triumph in the Third Battle Over the Second Amendment," 80 G.W.

LAW REV. 3, p. 704 (2012).

## II.  THE SAN FRANCISCO ORDINANCES VIOLATE THE SECOND AMENDMENT AS ELUCIDATED IN <u>HELLER</u>.

The panel holds the San Francisco regulations to be constitutional because

they **"limit but do not destroy** Second Amendment rights...." 746 F.3d at 957

(emphasis added). This judicial admission stands in stark contrast to the Second

Amendment, which demands that the right "**shall not be infringed**." To "limit"

something is to impose a new boundary on its exercise, while to "infringe" is to

cross an existing boundary. *See* <u>Webster's Encyclopedic Unabridged Dictionary</u>

<u>of the English Language</u> ("<u>Webster's Dictionary</u>"), Gramercy Books, New York,

1989, pp. 731, 831. The Second Amendment, as the Supreme Court has noted,

recognizes a preexisting right. <u>Heller</u> at 592. To "limit" certain conduct that the

panel admits is within the scope of the Second Amendment is the same as to

"infringe" it. Thus, the panel admits it has permitted San Francisco to

"infringe" a right that the Constitution declares "shall not be infringed."

### A.    The Panel Treats Heller as a Ceiling, Rather than a Floor.

In addressing handguns in the home, the Supreme Court viewed Heller as establishing a **floor** for Second Amendment rights.  It did not provide an exhaustive explanation of the scope of the Second Amendment.  Instead, it noted that "whatever else it leaves to future evaluation," the Second Amendment **at a minimum** protects the right to possess a handgun in the home for self defense. *Id.* at 635.  Indeed, the Heller Court noted that it had a relatively simple task in applying the Second Amendment to the District's "statute which … amounts to a destruction of the [Second Amendment] right [and therefore is] **clearly** unconstitutional." *Id.* at 629 (emphasis added).

The panel, however, treats Heller as establishing a **ceiling** of Second Amendment rights.  For example, Heller struck down a requirement that all handguns kept within the home be unloaded and locked away **at all times**.  Here, San Francisco's regulation requires that handguns be locked away **at all times —** **unless** they are being carried on the person.[6]  746 F.3d at 958.  Since carrying a

---

[6]    Here, the panel argues that the restriction "does not substantially prevent law-abiding citizens from using firearms to **defend** themselves in the home." *Id.* at 964.  This is simply not true.  San Francisco's statute has **only one exception** — when the gun is "**carried** on the person."  746 F.3d at 958 (emphasis added).  There is no exception for "use" of a firearm, including use in self-defense.  In Heller, the District argued there was an "implicit" self-defense

firearm on one's person is not always possible, the panel admits that "as a practical matter" the restriction "sometimes requires that handguns be kept in locked storage or disabled with a trigger lock." *Id.* at 964. Thus, the panel admits the San Francisco regulation "**sometimes**" imposes the **exact same burden** as did the District's.

Heller made clear that this burden violates "the right of law-abiding, responsible citizens to use arms in defense of hearth and home" (*id.* at 635), yet the panel upholds the San Francisco restriction. The panel turns Heller on its head, limiting the Second Amendment to the facts of Heller, and deciding that any infringement even a smidgen less burdensome of Second Amendment rights can be found permissible. On the contrary, the scope of the Second Amendment is not limited to the facts of Heller. Rather, the panel should have applied the textual and contextual principles articulated in Heller, which preclude interest-balancing and require striking down San Francisco's ordinances.

exception, but the Heller Court made clear that one would not be assumed to exist. Heller at 630.

**B.      The San Francisco Regulations Infringe the Right to Keep and Bear Arms Recognized in <u>Heller</u>.**

Writing in dissent in <u>Heller</u> v. <u>District of Columbia</u> ("<u>Heller II</u>"), 670 F.3d 1244 (D.C. Cir. 2011), Judge Kavanaugh correctly explained that standards of scrutiny were rejected in <u>Heller</u> because they permit judges to "re-calibrate the scope of the Second Amendment right based on judicial assessment of whether the law advances a sufficiently compelling or important government interest to override the individual right...." *Id.* at 1271.  Instead, Judge Kavanaugh recognized that the <u>Heller</u> test was one of "text, history, and tradition." *Id.* at 1275.  At issue in every Second Amendment case, then, is application of the Amendment's operative clause, involving (i) a protected group of **people**, (ii) a protected class of **arms**, and (iii) specific types of protected **activities**.

First, it is undisputed in this case that Plaintiffs are members of "The People"[7] protected by the Second Amendment.  Second, it is undisputed that the handguns at issue are protected "arms."  <u>Jackson</u> at 968.  The panel notes that

---

[7]      San Franciscan "peace officers" are exempted from the ordinance. *See* Pet. at 1.  This is contrary to the <u>Heller</u> mandate that the Second Amendment "codifies" a right that "belongs to all Americans." *Id.* at 580-81.  Even the panel's resort to First Amendment analogies would not support a special exemption for peace officers.  *See* <u>Thomas</u> v. <u>Chicago Park Dist.</u>, 534 U.S. 316, 325 (2002) ("[g]ranting waivers to favored speakers ... would, of course, be unconstitutional.").

10

the regulations "appl[y] to law-abiding citizens, and imposes restrictions on the use of handguns within the home." 746 F.3d at 967.

The sole and simple questions remaining, then, are whether Plaintiffs desire to engage in the protected activity of "keeping" and "bearing" their handguns, and whether the hollowpoint ammunition falls under the "arms" protected by the Second Amendment. If Plaintiffs' handguns and ammunition fall under these protected arms and activities, then their right is absolute — not subject to any "overriding" interests of the state — no matter how "important" or even "compelling" those interests may have seemed to San Francisco or to the panel.

To "keep" means "to maintain in usable condition." Webster's Dictionary, p. 781. Heller understood "keep" to mean "'[t]o retain; not to lose,' and '[t]o have in custody.'" Heller at 582. The panel defends San Francisco's storage regulation, since it only limits the "keeping" of handguns when they are not worn on the person, alleging that the storage requirement allegedly provides "ready access" which the panel believes is a good enough form of "keeping." Jackson at 967-968. But the Second Amendment text makes no reference to a right of "ready access" of a firearm in one's home. Rather, it secures the right

11

to "keep and bear arms." Since the Second Amendment uses no limiting words, the verb "keep" should be given its natural, broad meaning. It is therefore up to the individual to decide the manner in which he chooses to keep arms. It is not for the government to make such decisions for him. *See generally* Heller at 628-31.

The Second Amendment protects not only the right of those in San Francisco to keep their handguns in a "lockbox," but also in a night stand drawer, holstered on the kitchen table, tucked under a sofa cushion, or in a bag ready to go to the range. Under the San Francisco ordinance, however, a person may not clean his handgun and set it down on the table in front of him during the process; he may not have his handgun sitting on the coffee table in front of him as he watches TV; he may not show his daughter how the handgun works, handing even an empty handgun to her to hold to learn rules of safety; he may not go to bed with his handgun on his night stand should he need it to defend himself in the middle of the night; and technically he may not even take his handgun out of its lockbox and set it on his bed before he puts it in his holster.

Likewise, the ammunition limited by San Francisco's regulations constitutes "arms" protected by the Second Amendment. The Heller Court

understood "arms" to be "'[w]eapons of offence, or armour of defence.'" *Id.* at 581. A "weapon" is "any instrument or device for use in attack or defense in combat." Webster's Dictionary, p. 1616. A handgun without ammunition is an expensive club. Ammunition without a handgun is an expensive rock. Neither component alone is a functioning weapon; both are necessary components thereof. Hollowpoint ammunition is without dispute the most widely chosen handgun ammunition for self-defense. Indeed, the panel admits that the ammunition restriction infringes the right "to obtain the bullets **necessary** to use" firearms. 746 F.3d at 967 (emphasis added).

Nevertheless, the panel defends the ammunition sales ban because it does not restrict possession, nor prohibit acquisition outside the city. 746 F.3d at 959. But again, the Second Amendment does not say that Americans have a right to "keep and bear arms of which San Francisco approves." There are no limiting words on the term "arms," and thus it too should be given its natural, broad meaning. It is not up to San Francisco to decide what type of ammunition may be owned any more than it is up to the City to decide how handguns may be kept.

The Second Amendment, unlike San Francisco's regulations, does not

make such distinctions.  Rather, it protects the "keeping" of "arms" in all the iterations of those words.  "Keeping" a handgun locked away does not comport with the most basic concept of the word "to maintain in usable condition." Keeping a handgun without the most popularly chosen ammunition for its use does not comport with the most basic concept of "arms" including "**any** instrument or device for use in attack or defense."  Thus, the City's restrictions violate the Second Amendment.

## III.  PRETENDING TO WEIGH THE COMPETING INTERESTS, THE PANEL SIMPLY DEFERRED TO THE CITY.

### A.  The Panel's Two Step Permits It to Sidestep <u>Heller</u>.

The panel adopts a "**two-step**" test that has been devised and widely employed by the lower federal courts.  *Id*. at 960.  This test permits courts to sidestep <u>Heller</u> by engaging in precisely the "judge-empowering interest-balancing" that <u>Heller</u> rejected — giving federal judges "the power to decide on a case-by-case basis whether the right is *really worth* insisting upon."  <u>Heller</u> at 634.

Pursuant to **Step One** of the test, the panel looks to see whether the regulations  "burden[] conduct protected by the Second Amendment…."  746 F.3d at 960.  Based on <u>Heller</u>, the panel is forced to admit that it does.  *Id*. at

14

963.

Next, the panel moves to **Step Two** of its test, which is further subdivided into two subparts.  In **Step Two, Part One**, the panel is again, based on <u>Heller</u>, forced to conclude that the regulations burden quintessential "core" Second Amendment conduct (self defense with a handgun in the home).  *Id*. at 964.

### 1.    The Panel Leaves It to the City to Establish How Burdensome Its Regulations Are.

Although the panel finds that the San Francisco ordinances burdened core fundamental rights (*id*. at 961), using its smidgen theory (*see* Section II.A, *supra*), the panel frees itself to engage in interest balancing.  In **Step Two, Part Two**, the panel selects what level of scrutiny to apply to the statute, determines by looking at "the severity of" the burden imposed.  *Id*. at 964.  The panel assumes that the burden imposed on self-defense in the home is "indirect" and thus insubstantial.  *Id*.  Underlying this assumption is the panel's reliance on the **City's assertions** at trial that stored handguns are easily accessed.  *Id*.  The City claims that "there is no empirical research anywhere suggesting that storing guns locked … diminishes gun owners' ability to use their weapons for self-defense. This is unsurprising in light of how quickly modern lockboxes can be opened…." Resp. Br. at 5.  The panel adopts the City's assertions as fact, noting that "[t]he

15

record indicates that a modern gun safe may be opened quickly. Thus, even when a handgun is secured, it may be readily accessed in case of an emergency." *Id.* at 964.

Homeowners — not the government — should decide where and how to store their firearms. Consider a law requiring all fire extinguishers to be kept in locked containers. The challengers to that law no doubt would argue, as the City has here, that "the delay inherent in rendering a [fire extinguisher] operable or in retrieving it from a locked container theoretically could impair a person's ability to employ it successfully in [fire suppression]." Resp. Br. at 15-16. Would the City, as it has here, denounce such an argument as "pure speculation" and claim that "this possibility is very slight indeed. The time needed to open a lockbox to obtain a [fire extinguisher] is minimal — a few seconds at most"? *Id.* at 16.

The panel's erroneous finding of ease of access is a critical determination, because if a locked firearm cannot be readily accessed, the panel would have been forced to find that the burden on "core" self defense rights was severe.

Justifying the ban on hollowpoint ammunition, the panel dismisses plaintiffs' claims that "hollow-point bullets are **far better** for self-defense" with the *non sequitur* that "[t]here is no evidence … that ordinary bullets are

**ineffective** for self-defense."[8] *Id.* at 968 (emphasis added). Instead, the panel

claims the burden imposed by the ammunition ban is minor and "indirect" since

a person can leave the City to buy ammunition or have it shipped to him. *Id.*

Finally, the panel likens a ban on certain types of ammunition to a "time, place,

and manner" restriction, since full metal jacket ammo is still permitted.[9] *Id.*

Based on this, the panel determines that San Francisco's regulations impose but a

minimal burden on core Second Amendment rights.

### 2. The Panel Leaves It to the City to Establish How Important the Government's Interests Are.

Since the panel determines San Francisco's ordinances impose a minor

burden on Second Amendment rights, the panel applies intermediate scrutiny,

asking first whether the City has an "legitimate" or "important" government

interest in its regulations. *Id.* at 969. The panel avoids the true reason the

regulations were enacted, accepting without question "the government's **stated**

objective." *Id.* at 965 (emphasis added). The panel then takes the City at its

---

[8] The Court in <u>Heller</u> rejected the District's claim that handguns were no better for self-defense than rifles, and the city's argument here should fair no better. *Id.* at 710, n.3

[9] Of course, <u>Heller</u> stated that "[i]t is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (*i.e.*, long guns) is allowed."

17

word, "so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *Id.* Thus, the City **must only assert** that it has an important interest.

In support of its storage requirement, the City asserts the customary amorphous, catch-all interest of "public safety." Resp. Br. at 7. All the panel must do, then, is assert that "'it is **self-evident**' … that public safety is an important government interest." 746 F.3d at 965 (emphasis added). In support of its ammunition ban, the City asserts that "a legitimate, important and compelling government interest in reducing the likelihood that shooting victims in San Francisco will die of their injuries…." *Id.* at 969. In lockstep with the City, the panel thereafter recites that "[i]t is self-evident that San Francisco's interest in reducing the fatality of shootings is substantial." *Id.*

Thus, since the City used the right catchphrases, the panel defers and determines that the first prong of intermediate scrutiny is satisfied.

Finally, the panel examines whether San Francisco's regulations are "substantially related to San Francisco's important interest." *Id.* at 966. The City claims that it is not "required to prove that its legislative judgments are empirically correct. Instead, **courts defer to legislative judgments about**

18

**whether a measure is substantially related to a compelling state goal**." Resp.
Br. at 23 (emphasis added). Indeed, the panel accepts the City's position, as it
reviews the "legislative" findings of the City with great deference, noting that the
City has alleged that "storing handguns in a locked container reduces the risk" of
shootings. *Id.* at 966. If that is the case, then all the city is required to do is
**assert** that its ordinance — which it has **asserted** imposes but a minimal burden
— furthers its **asserted** interest. The panel never actually considers the truth or
falsity of the City's assertions. Rather the panel simply repeats and accepts
them.

As for hollowpoint ammunition, the panel accepts the city's assertions as
to the lethality of jacketed hollowpoint ammunition compared to full-metal jacket
ammunition. *Id.* at 969. The panel flatly rejects plaintiffs' reputable and
substantial evidence to the contrary, giving blind deference to the city, which the
panel says "may rely on any evidence 'reasonably believed to be relevant,'" so
long as it "'fairly supports'" its assertions. *Id.* at 969.

## CONCLUSION

The panel substituted its balancing of interests for a careful parsing of the
constitutional text. However, the faithful interpretation of the written

constitutional text is of the "very essence of judicial duty." <u>Marbury</u> v.

<u>Madison</u>, 5 U.S. 137, 178 (1803). As Justice Scalia put it in <u>Heller</u>: "The very

enumeration of the right [to keep and bear arms] takes out of the hands of ... —

even the Third Branch of Government — the power to decide on a case-by-case

basis whether the right is *really worth* insisting upon." <u>Heller</u> at 634. In

defiance of <u>Heller</u>, the panel acted otherwise. The petition for rehearing should

be granted.

Respectfully submitted,

   /s/Herbert W. Titus   

MICHAEL CONNELLY           HERBERT W. TITUS*
  U.S. JUSTICE FOUNDATION     ROBERT J. OLSON
  932 D Street, Ste. 2          WILLIAM J. OLSON
  Ramona, CA 92065          JEREMIAH L. MORGAN
*Attorney for Amicus Curiae*    JOHN S. MILES
  *U.S. Justice Foundation*      WILLIAM J. OLSON, P.C.
                         370 Maple Avenue West, Suite 4
July 3, 2014                Vienna, Virginia 22180-5615
*Attorney of record           (703) 356-5070

20

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

IT IS HEREBY CERTIFIED:

1.      That the foregoing Brief *Amicus Curiae* complies with the word limitation set forth by Circuit Rule 29-2, because this brief contains 4,142 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect version 13.0.0.568 in 14-point CG Times.


/s/Herbert W. Titus

_____

Herbert W. Titus
Attorney for *Amici Curiae*

Dated: July 3, 2014

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Brief *Amicus Curiae* of Gun Owners of America, Inc., *et al.*, in Support of Petition for Rehearing *en Banc*, was made, this 3rd day of July 2014, by the Court's Case Management/Electronic Case Files system upon the attorneys for the parties.

/s/Herbert W. Titus
_____
Herbert W. Titus
Attorney for *Amici Curiae*